## O'KEEFE v DEPARTMENT OF SOCIAL SERVICES

Docket No. 90334. Submitted December 2, 1986, at Lansing. Decided May 7, 1987.

The Michigan Department of Social Services and the Michigan State Employees Association, collective bargaining representative of certain employes of the DSS, entered into a letter of understanding concerning the meaning and application of certain language in the collective bargaining agreement relative to how seniority would be computed for the purpose of recalls. This letter of understanding was apparently not ratified by the employees affected. Sean O'Keefe and Kathleen Billmieir each filed an individual grievance and O'Keefe filed a group grievance in accordance with the collective bargaining agreement, alleging that the letter of understanding had caused their recall to be delayed and that the letter of understanding was violative of a provision in the MSEA constitution which required ratification by the affected workers. The MSEA arbitration committee declined to arbitrate O'Keefe's group grievance on the ground that no provision of the collective bargaining agreement had been violated. O'Keefe appealed that decision to the MSEA president, but he did not further appeal the decision to the MSEA board of directors and, the general assembly as required by the MSEA constitution and by-laws. While his grievance was pending, O'Keefe filed an unfair labor practice charge against the MSEA and the DSS with the Michigan Civil Service Commission (MCSC). The hearing officer dismissed the charge, holding that the MSEA's handling of O'Keefe's grievance did not constitute a breach of the duty of fair representation and that the underlying dispute was contractual in nature and properly a subject of the grievance procedure. The employee relations

REFERENCES

Am Jur 2d, Civil Service § 80.

Am Jur 2d, Labor and Labor Relations §§ 239, 240, 452, 1932 et seq.

What circumstances justify employee's failure to exhaust remedies provided in collective bargaining agreement before bringing grievance suit against employer in federal court, under sec. 301 of the Labor Management Relations Act of 1947 (29 USCS § 185). 52 ALR Fed 591.

board denied leave to appeal and the MCSC affirmed. No appeal from the commission determination was taken.

O'Keefe and Billmieir then filed a complaint in Saginaw Circuit Court alleging deprivation of due process, violation of their civil rights, violation of their right to fair representation and impairment of contractual rights by the DSS and the MSEA. Defendants moved for summary disposition on the grounds that exclusive jurisdiction over the dispute rested with the MCSC, that plaintiffs failed to fully exhaust their administrative remedies and that plaintiffs failed to exhaust their intra-union remedies. The trial court, Robert L. Kaczmarek, J., granted summary disposition in favor of defendants on the basis of the failure to exhaust administrative and intra-union remedies. Plaintiff O'Keefe appealed.

The Court of Appeals *held:*

1. Plaintiff was not relieved of his duty to exhaust his administrative remedies before commencing an independent court action merely because some of his claims could not be decided by the MCSC. By the same token, he was not relieved of the responsibility to exhaust his administrative remedies, including the right to an appeal to circuit court from the agency decision, merely because the agency decision did not rest on the merits of his claim but rather his failure to exhaust intra-union remedies.

2. Because there was the right to a direct appeal to circuit court from the agency decision, plaintiff was afforded an adequate remedy such that he was not excused from exhausting his rights to administrative review.

3. While an employee may be relieved of the duty to exhaust administrative and intra-union remedies where it can be shown that the employee's union breached the duty of fair representation, plaintiff is not relieved of the duty to exhaust nonjudicial remedies in this case. The MCSC hearing officer found that there was no breach of the duty of fair representation, and plaintiff failed to directly challenge that finding by exercising his right to direct appellate review by the circuit court of that determination. Plaintiff is thus bound by that holding, and his mere allegation of lack of fair representation in the face of that holding is insufficient to relieve him of his duty to exhaust intra-union remedies.

Affirmed.

1. ADMINISTRATIVE LAW — CIVIL SERVICE — LABOR RELATIONS — EXHAUSTION OF REMEDIES.

A circuit court may dismiss an action brought by a classified state

civil service employee against the employer and the employee's union on the ground of the plaintiff's failure to exhaust intraunion and administrative remedies where at the time of the bringing of the circuit court action there existed the right to review before the Michigan Civil Service Commission; the fact that the Civil Service Commission could not provide all the relief requested does not obviate the requirement that the plaintiff exhaust all administrative remedies before the circuit court acquires jurisdiction (MCL 24.301; MSA 3.560[201]).

2. ADMINISTRATIVE LAW — EXHAUSTION OF REMEDIES — PUBLIC POLICY.

The doctrine of exhaustion of administrative remedies serves several policies: (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary.

3. LABOR RELATIONS — CIVIL SERVICE — COLLECTIVE BARGAINING AGREEMENTS — EXHAUSTION OF REMEDIES — FAIR REPRESENTATION — ADMINISTRATIVE LAW.

A classified state civil service employee has a right to seek judicial enforcement of the collective bargaining agreement under which the employee is employed without first exhausting the exclusive grievance procedures provided under the contract where the employee has alleged and can show that the employee's union has breached its duty of fair representation; a determination by a hearing officer for the Michigan Civil Service Commission that the union did not breach its duty of fair representation will, in the absence of administrative review, be conclusive on the question of whether the union's fair representation was such as will preclude judicial review prior to exhaustion of any grievance procedures required by the contract.

*Frank & Forester* (by *Michael J. Forester*), for plaintifff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Gary P. Gordon* and *Cheryl B. Lord,* Assistant Attorneys General, for the Department of Social Services.

*Jinger K. Andrews,* for the Michigan State Employees Association.

Before: BEASLEY, P.J., and R. B. BURNS and G. D. LOSTRACCO,* JJ.

PER CURIAM. In June, 1982, plaintiffs, Sean O'Keefe and Kathleen Billmieir, were laid off by defendant Department of Social Services. Defendant Michigan State Employees Association was their exclusive union representative. The collective bargaining agreement between the DSS and the MSEA established layoff and recall procedures. This lawsuit originated in the interpretation of those procedures.

Basically, the agreement provided that recall was to be made in the inverse order of seniority. Seniority was defined as "length of service at a level, including service at a higher level." "Level" was defined as the "Civil Service position comparison equivalent level."

On October 18, 1982, the DSS and the MSEA entered into a "letter of understanding" in which they defined how seniority would be computed for purposes of recalls, commencing in October, 1982, and also specified that the MSEA would "remove as an issue for arbitration the issue of layoff by level within a class series." This letter of understanding was apparently not ratified by the employees affected. The MSEA constitution in effect at that time provided that the MSEA, when acting as an exclusive representative, "shall not enter into any unit-wide agreement, excluding ground rules, unless the agreement has been ratified by the Association members in the affected unit." The collective bargaining agreement provided that the "MSEA, through an authorized Officer or Staff Representa-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tive, may grieve an alleged violation concerning the application or interpretation of this Agreement."

Plaintiffs were recalled under the letter of understanding later than certain other employees, to whom they would have been senior under what they allege to be the clear and unambiguous definition of seniority prior to the letter of understanding.

Plaintiffs initially filed individual grievances. O'Keefe also filed a "group grievance." On January 29, 1983, the MSEA arbitration committee declined to arbitrate O'Keefe's "group grievance" on the ground that no provision of the collective bargaining agreement had been violated. O'Keefe appealed that decision to the MSEA president, but did not appeal to the next higher levels of appeal, namely, the MSEA board of directors and general assembly. The MSEA constitution and bylaws required union members to exhaust all intra-union remedies before resorting to any court or administrative body.

On January 4, 1983, before the decision of the arbitration committee, O'Keefe filed an unfair labor practice charge against the MSEA and the DSS, which was reviewed by the Michigan Civil Service Commission (MCSC), Bureau of Labor Relations, Hearing Division. The hearing officer dismissed O'Keefe's charge in a decision and order dated August 23, 1983. The hearing officer held that the MSEA's handling of O'Keefe's grievances did not constitute a breach of the duty of fair representation and that any violation of the underlying collective bargaining agreement would be contractual, not giving rise to a violation of the employer relations policy rule. In particular, the hearing officer held as follows regarding such a breach of contract:

The undersigned Administrative Law Judge hereby adopts and adheres to the consistent policy of the Michigan Employment Relations Commission in refusing to decide mere contract interpretation questions under the heading or guise of an unfair labor practice. . . .

When an exclusive representative and an employer negotiate a grievance procedure for the express purpose of deciding contractual disputes, MERC has reasoned and the undersigned agrees, it is normally inappropriate for an Unfair Labor Practice hearing officer to step in and determine what the parties to the contract meant by particular language. The only exception recognized by MERC is that where the contractual violation and the employer's conduct amounts to a complete renunciation of the agreement, the resulting breach may constitute evidence of a failure to bargain in good faith. In the instant case the exception is not applicable because the allegedly violated layoff and recall provisions constitute only a small portion of the overall agreement and it cannot reasonably be argued that their violation is a renunciation of the entire contract.

The fact that the instant charge was filed against the Union in addition to the employer does not alter the essential nature of the complaint as being a contractual dispute which should be resolved via the grievance procedure rather than by an unfair labor practice proceeding. [Citations omitted.]

On May 7, 1984, the employee relations board denied leave to appeal because O'Keefe had not timely filed his appeal and, in any event, he had no meritorious basis for appeal. The MCSC affirmed that decision as its final decision. Plaintiff did not appeal the MCSC final decision to the circuit court.

While administrative review of the hearing officer's decision was pending, plaintiffs filed suit against the DSS and the MSEA in the United States

District Court for the Eastern District of Michigan on October 24, 1983. In an order entered November 2, 1984, the United States District Court dismissed the case without prejudice as to state court remedies under state law.

On December 12, 1984, plaintiffs filed the action which forms the basis for this appeal in the Saginaw Circuit Court. The complaint alleged deprivation of due process rights, violation of civil rights under 42 USC 1983, violation of the right of fair representation, violation of the right to fair treatment, and breach or impairment of contractual rights. On May 2, 1985, the MSEA filed a motion for summary disposition under MCR 2.116(C)(4)-(7) on the grounds that (a) the subject matter was within the exclusive jurisdiction of the MCSC, (b) plaintiffs failed to fully exhaust their administrative remedies after their claims were heard by a hearing officer, and (c) plaintiffs failed to exhaust their intra-union remedies.

On July 11, 1985, the circuit court entered an opinion granting summary disposition to the MSEA and the DSS on the specific grounds that plaintiffs had failed to exhaust both their administrative remedies and their intra-union remedies. The court seems not to have addressed the question of whether the subject matter was within the exclusive jurisdiction of the MCSC, nor used that issue as a basis of its decision. Plaintiffs filed a motion for reconsideration, which was denied. They then filed a motion to set aside the orders granting summary disposition and denying reconsideration based on the Supreme Court decision in *Demings v City of Ecorse*.[1] The motion was denied on January 14, 1986. Plaintiff Billmieir has not appealed. Plaintiff O'Keefe appeals as of right.

[1] 423 Mich 49; 377 NW2d 275 (1985).

Plaintiff's first argument appears to be a response to the MSEA's allegation at the circuit court level that the MCSC had exclusive jurisdiction to hear the subject matter of the dispute. As the circuit court neither based its decision on this allegation nor mentioned the allegation in its opinion, we need not respond to plaintiff's argument.

Plaintiff next raises a set of arguments apparently meant to respond to the circuit court's determination that plaintiff failed to exhaust his administrative remedies. We note at the outset that, while the exhaustion doctrine as described in MCL 24.301; MSA 3.560(201) appears by its terms to apply only to appeals from administrative decisions, it has been applied in cases where the only action brought was brought in the circuit court.[2] There is no reason not to apply the doctrine to cases where suits have been brought in administrative agencies but not carried to their final point of appeal. No purpose would be served by requiring exhaustion in cases never brought to an agency and in cases appealed from an agency, but not in cases originally brought in an agency and later brought before a court.

In the first argument with which he attempts to obviate the need for exhaustion of administrative remedies, plaintiff says that his complaint contained constitutional claims which could not be addressed by the MCSC. This would make no difference, however, as it is clear that some of the claims, most notably the claim that defendant MSEA violated plaintiff's right to fair representation, were within the jurisdiction of the MCSC.[3] The fact that the agency could not provide all of the

---

[2] See *Doster v Estes,* 126 Mich App 497, 513-515; 337 NW2d 549 (1983); *International Business Machines v Dep't of Treasury,* 75 Mich App 604, 610; 255 NW2d 702 (1977).

[3] Civil Service Commission Rules 6-8.2, 6-12.1.

relief requested does not obviate the requirement that plaintiff exhaust the available administrative remedies before the circuit court acquires jurisdiction. Further, the mere presence of a constitutional issue does not excuse the exhaustion requirement where, as here, there are other issues in controversy.[4]

Plaintiff also argues that the hearing officer never decided the merits of plaintiff's contractual claim. Plaintiff cites the above quoted language from the hearing officer's opinion regarding his contractual claim, as well as defendants' arguments at the administrative level, that interpretation of the contract by the hearing officer was inappropriate. Plaintiff reasons that, because a central part of his claim was never decided by the hearing officer, he should not have been required to exhaust further administrative remedies. As previously noted, however, the mere fact that some of plaintiff's claims were not addressed does not excuse him from pursuing the entire administrative process. In *IBM v Treasury Dep't*,[5] this Court held:

> Exhaustion of administrative remedies serves several policies: (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary.
> Exhaustion of administrative remedies is not an

---

[4] *Eyde v Lansing Twp,* 105 Mich App 370, 376; 306 NW2d 797 (1981), aff'd 420 Mich 287 (1984); *Attorney General v Diamond Mortgage,* 102 Mich App 322, 325, 327; 301 NW2d 523 (1980), rev'd on other grounds 414 Mich 603 (1982).

[5] 75 Mich App 604, 610; 255 NW2d 702 (1977).

inflexible condition precedent to judicial considera-
tion, however, and will not be required if review of
the agency's final decision would not provide an
adequate remedy, *i.e.,* if it would run counter to
the policies which underlie the doctrine. [Citations
omitted.]

Here, review of the agency's final decision by
direct appeal to the circuit court could provide an
adequate remedy. Were the circuit court, in its
*appellate* guise, to reverse the MCSC holding that
the union had not breached its duty of fair repre-
sentation, plaintiff would have been able to obtain
relief. His failure to resort to the appellate process
precluded the circuit court from making such an
appellate decision.

We also examine in turn each of the specific
policies cited in the *IBM* case. As to the first
policy, the filing of suit in the circuit court, instead
of *timely* appeal to the employee relations board,
would disrupt the cohesive administrative scheme.
As to the second policy, obviously there was a full
factual record before the hearing officer, so that
resort to the court did not run counter to that
policy. As to the third, the constitution itself spe-
cifically entrusts the making of rules and regula-
tions covering personnel transactions and the reg-
ulation of all conditions of employment in the
classified service to the MCSC.[6] Further, the MCSC
has considerable expertise in such matters as fair
representation law. Finally, and most importantly,
plaintiff's success at the administrative level would
have made resort to the circuit court unnecessary.

Plaintiff argues that, because the hearing officer
did not decide the contract issues in the case, the
decision on the fair representation issue had no
effect on his claim against the employer. Plaintiff
then cites the United States Supreme Court deci-

---

[6] Const 1963, art 11, § 5.

sion in *Vaca v Sipes*,[7] which seems to us to oppose his position. *Vaca* holds that individual employees may sue a private employer for breach of a collective bargaining agreement under § 301 of the Labor Management Relations Act (LMRA),[8] *provided* that the employee can prove that the union, as bargaining agent, breached its duty of fair representation in its handling of the employee's grievance. It makes no difference whether the employee sues the union alone, the employer alone, each separately, or both together.[9] In Michigan, even though we have no statutory provision similar to § 301 of the LMRA,[10] this Court found a similar right of suit for employees coming under the public employment relations act[11] in *Demings v City of Ecorse:*[12]

> In Michigan, a public employee's union is granted the same power of exclusive representation by § 11 of PERA as is granted unions in the private sector by § 9 of the NLRA. As in the private sector, the power of exclusive representation implies the duty to represent fairly. The statutory grant of the power of exclusive representation might infringe on the due process rights of a member of a bargaining unit absent the implication of a duty to represent fairly. We think that, for public employees, the existence of the right to fair representation must be implied from the grant to unions of exclusive bargaining rights. In the present case, the duty to fairly represent its members in the grievance procedure must be implied from the union's exclusive control over the procedure. Having concluded that the duty of the public

---

[7] 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967).

[8] 29 USC 185.

[9] *Id.,* 386 US 183-187.

[10] *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104, 123-124; 252 NW2d 818 (1977).

[11] MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.*

[12] 127 Mich App 608, 616-617; 339 NW2d 498 (1983), aff'd and modified on other grounds 423 Mich 49 (1985).

employee's union exists, we have no doubt that a cause of action exists under state law where the duty is breached. *Plaintiff is claiming that the city breached its contract with him; his claim of the union's bad faith precludes the employer from barring his claim by relying on plaintiff's failure to pursue the exclusive grievance procedures provided under the contract.* Plaintiff's cause of action is the same as that of an employee in the private sector. [Emphasis added, citations omitted.]

Not only do the Civil Service Commission rules give the same right of exclusive representation, they also explicitly impose a duty of fair representation.[13] Thus, the same logic applied to other public employees in *Demings* should apply doubly to classified civil service employees. The rights of civil service employees to sue for breach of collective bargaining agreements are, therefore, subject to the same limitations as those of private employees under *Vaca,* or public employees under *Demings.* Thus, plaintiff could only sue in contract if he had first proved breach of the duty of fair representation by MSEA. The hearing officer specifically found that MSEA did *not* breach its duty of fair representation. Plaintiff did not appeal this decision to the circuit court, but instead brought a new action.

It is established law in this state that the doctrines of res judicata and collateral estoppel apply to administrative determinations which are adjudicatory in nature where a method of appeal is provided and where it is clear that it was the legislative intention to make the determination final in the absence of an appeal. Under the doctrine of collateral estoppel, where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in

---

[13] Civil Service Commission Rules 6-5.2, 6-5.4, 6-8.2.

a subsequent action.[14] Thus, the hearing officer's determination that there was no breach of the duty of fair representation would be conclusive, preventing an action for breach of contract against the employer. The failure to exhaust administrative remedies on the fair representation claim is fatal to a circuit court determination of the contract claim.

Because plaintiff's failure to exhaust his administrative remedies requires affirmance regardless of whether he actually exhausted his intra-union remedies, we do not address that latter issue.

Affirmed.

---

[14] *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 399 Mich 449, 457-458; 249 NW2d 121 (1976).